UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

—————————————————————————
                                    :
JESUS A. ARAIZA-AVILA,              :
                                    :
        Petitioner,                 :    Civ. No. 16-4003 (NLH)
                                    :
    v.                              :    OPINION
                                    :
WARDEN OF NEW JERSEY                :
STATE PRISON                        :
                                    :
        Respondent.                 :
—————————————————————————           :

APPEARANCES:
Jesus A. Araiza-Avila
New Jersey State Prison, No. 413068C
PO Box 861
Trenton, NJ 08625
    Petitioner pro se

Jennifer L. Bentzel
Burlington County Prosecutor's Office
New Courts Facility
49 Rancocas Road
Mount Holly, NJ 08060
    Counsel for Respondents

HILLMAN, District Judge

    Petitioner Jesus A. Araiza-Avila ("Petitioner"), a prisoner

presently incarcerated at New Jersey State Prison in Trenton,

New Jersey has filed a petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 (the "Petition"). (ECF No. 1.)  By

order of the Court, (ECF No. 2), Respondent the Warden of New

Jersey State Prison ("Respondent") filed an answer to the

Petition (the "Answer"), (ECF No. 8).  Petitioner filed a reply

to the Answer (the "Reply").  (ECF No. 9.)  The Petition is ripe

for disposition.  For the reasons stated below, the Petition

will be denied.

## I.   BACKGROUND

The New Jersey Superior Court, Appellate Division set forth

the facts underlying Petitioner's conviction, as established at

a jury trial, as follows:

> The State's evidence revealed the following
> facts.  Defendant and Autumn Moyer lived
> together and had a baby girl.  Their
> relationship ended and Moyer began another
> relationship with Gilbert Parra.  On August
> 31, 2007, in a telephone conversation,
> defendant threatened to assault Moyer.
> Parra then took the phone from Moyer and
> told defendant that his child referred to
> Parra as "daddy" now.  During the early
> morning hours of September 1, 2007,
> defendant and his uncle went to the house of
> Moyer's family.  Defendant called and spoke
> to Moyer's sister.  He asked her to come
> outside.  She complied, but upon seeing
> defendant, ran back into the house and told
> her sister and Parra of defendant's presence
> in front of her home.
>
> Parra and Moyer then went outside.  Shortly
> thereafter, both were shot.  Parra was
> killed and Moyer was shot in the ankle.
> Immediately after the shootings, Moyer told
> her family "Chaparro shot me" and "He shot
> me, he shot Gilbert, why did he shoot us,
> why did he shoot me?"  Moyer testified at
> trial that defendant ran from the bushes and
> shot Parra first.  He then told her in
> Spanish that it was her turn before shooting
> her in the ankle.  She also testified about
> prior threats made against her by defendant.
> Shortly after the shootings, police stopped
> a pick-up truck in which defendant and his
> uncle were traveling with two other
> individuals.  The uncle was bare-chested and

> appeared intoxicated. Defendant was wearing
> a green shirt. Police later found a pair of
> gloves and a .38 caliber revolver containing
> six spent cartridges in the truck. Forensic
> investigation revealed that the gun fired
> the bullets that killed Parra. No
> fingerprints were found on the gun, but
> defendant's DNA was found on the gloves.
> Defendant's cell phone records indicated he
> called the victim's residence fourteen times
> that night.
>
> . . .
>
> Moyer's brother, Jonathan, testified that
> defendant's uncle, Rafael Nava-Avila, who
> appeared intoxicated, had knocked on their
> door and asked for a beer. Jonathan sent
> him away. Shortly thereafter, Parra was
> killed. Assuming it to be true, Jonathan
> told the police that Nava-Avila had killed
> Parra.

State v. Araiza-Nava-Avila, Indictment No. 07-11-1631, 2012 WL 1231888, at *1 (N.J. Super. Ct. App. Div. Apr. 13, 2012) (footnote omitted).

In his defense, Petitioner presented testimony from one of Moyer's neighbors, who observed some men around the house and heard gunshots around 3:00 a.m. Id. While the neighbor had originally told police that the shooter was wearing a white shirt, he testified at trial that he recalled the shooter to have worn a green shirt. Id. Petitioner also called Detective Jayson Abadia of the Burlington County Prosecutor's Office, who had interviewed Nava-Avila on the day of the shooting. Id. at *2. In response to questioning by defense counsel, "Abadia

3

testified to learning later in the investigation that Jonathan had stated Nava-Avila was the shooter.  Abadia testified:  "But what occurred that night, the information that was related that evening, we were confident based on the investigation that the defendant was the trigger man, was the shooter."  Id.  Defendant did not testify on his own behalf and maintained throughout trial that Nava-Avila was the shooter.  Id.

The jury convicted Petitioner of first-degree murder, N.J. Stat. Ann. § 2C:11-3(a)(1), (2), and second-degree aggravated assault, N.J. Stat. Ann. § 2C:12-1(b)(1).  (ECF No. 8-8.) Petitioner was sentenced to a 30-year prison term on the murder conviction, with a 30-year mandatory minimum; and a 5-year prison term on the aggravated assault conviction, subject to the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.  (ECF No. 8-8.)

Petitioner filed an appeal of his conviction and sentence to the Appellate Division.  (ECF No. 8-14.)  In an unpublished, per curiam decision, issued on April 13, 2012, the Appellate Division affirmed Petitioner's conviction and sentence.  Araiza-Nava-Avila, 2012 WL 1231888.  Petitioner then filed a petition for certification to the New Jersey Supreme Court, which was denied on October 25, 2012.  State v. Araiza-Nava-Avila, 54 A.3d 811 (N.J. 2012).

Thereafter, Petitioner filed a petition for post-conviction relief (the "PCR Petition") in the Superior Court of New Jersey,

Law Division. (ECF No. 8-24.) Petitioner raised one claim in
the PCR Petitioner: that his counsel was ineffective for
failing to provide copies of discovery that had been translated
into Spanish for Petitioner. (ECF No. 8-25, at 9-10.) The PCR
Petition was denied without an evidentiary hearing. (ECF No. 8-
27.) Petitioner appealed that decision to the Appellate
Division, which affirmed the decision of the PCR Court in an
unpublished opinion dated June 23, 2015. See State v. Araiza-
Avila, A-3148-13T3, 2015 WL 3843509 (N.J. Super. Ct. App. Div.
June 23, 2015). The Supreme Court denied certification on June
3, 2016. State v. Araiza-Avila, 141 A.3d 297 (N.J. 2016).

On or about July 1, 2016, Petitioner filed the instant
Petition seeking relief pursuant to 28 U.S.C. § 2254. (ECF No
1.) In the Petition, Petitioner raises five claims for relief:

> Ground One: The Court ordered sequential
> deliberations which effectively prevented
> the jury's consideration of
> Passions/Provocation Murder.
>
> Ground Two: The Court erred in admitting
> prior threats allegedly made by the
> Defendant because they were highly
> prejudicial and should have been excluded
> under rule 403.
>
> Ground Three: The Defendant was denied a
> fair trial when the court failed, sua
> sponte, to strike the testimony of Detective
> Abadia in which he stated that the defendant
> was guilty of the shooting.
>
> Ground Four: The Court failed to instruct
> the jury on the inherent unreliability of

> oral statements allegedly made by the
> Defendant.
>
> Ground Five:  Trial counsel was ineffective
> for failing to provide [a] translator
> translated copy of discovery.[1]

(ECF No. 1, at 5-9.)  Respondent filed an Answer in which he argues that Petitioner has failed to state a claim upon which habeas relief may be granted.  (ECF No. 8, at 41-44.) Petitioner filed a timely Reply.  (ECF No. 9.)

Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  (ECF No. 10).  Petitioner has advised the Court that he would like the Petition to be ruled on as filed.  (ECF No. 11.)

## II.  STANDARD OF REVIEW

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the fact or duration of his confinement where the petitioner claims his custody is in violation of the Constitution or the laws of the United States. See 28 U.S.C. § 2254(a); Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973).  A habeas petitioner bears the burden of establishing his entitlement to relief for each claim

---

[1] This claim could be read to assert error based on a failure to provide a translator.  It is clear from the Petition as a whole that Petitioner's claim, discussed infra, is that it would have been beneficial if his counsel had provided him translated copies of the discovery in the case.

presented in the petition. See <u>Harrington v. Richter</u>, 562 U.S. 86, 98 (2011).

The standard used in reviewing habeas claims under § 2254 depends on whether those claims have been adjudicated on the merits by the state court. If they have not been adjudicated on the merits, the Court reviews de novo both legal questions and mixed factual and legal questions. See <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001). If the state court adjudicated the claim on the merits, then 2254(d) limits the review of the state court's decision as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254(d). The statute is clear. If a claim has been adjudicated on the merits in state court,[2] this Court has "no

---

[2] "[A] claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." <u>Lewis v. Horn</u>, 581 F.3d 92, 100 (3d Cir.

authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not

---

2009) (quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." Pinholster, 563 U.S. at 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." Id. (quoting Harrington v. Richter, 562 U.S. 86, 98 (2011); see also Johnson v. Williams, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").

constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." Parker, 567 U.S. at 48-49 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" Williams, 529 U.S. at 405-06. Under the " 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law." Harrington v. Richter, 62 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410).

**III. DISCUSSION**[3]

**1. Ground One**

In Ground One, Petitioner asserts that the trial court's

---

[3] The Court notes that its review of the record indicates that Grounds One and Two appear to be unexhausted based on

instruction to the jury regarding sequential deliberation of the
murder charge and the lesser-included offense of passion-
provocation murder "effectively prevented the jury's
consideration of" passion-provocation murder.  (ECF No. 1, at
5.)  Petitioner alleges that the trial court's instruction to
consider these offenses sequentially violated his due process
rights under the Fifth and Fourteenth Amendments.  (ECF No. 9,
at 24.)

Petitioner specifically takes issue with the following part
of the trial court's charge to the jury:

> The first question is this:  Defendant Jesus
> Araiza Avila is charged with murder as a
> result of an incident that occurred on
> September 1, 2007, in Burlington City.  With
> respect to this charge, how do you find?
> Your choices are not guilty or guilty.  . .
> .  If you are satisfied that the State has
> met its burden of proof and has demonstrated
> beyond a reasonable doubt each of the
> elements of the charge of murder, then your
> answer on this question is guilty.  And if
> you answer this question guilty, you do not
> need to answer Questions 2, 3, or 4, you can

---

Petitioner's failure to "fairly present" his federal claims to
the state court for review and only argued that these errors
violated New Jersey state law.  See Rainey v. Varner, 603 F.3d
189, 198 (3d Cir. 2010) (observing that for a habeas petitioner
to "fairly present" a federal claim to the state courts he must
"present [its] factual and legal substantive to the state courts
in a manner that put them on notice that a federal claim is
being asserted").  While the Court is permitted to raise the
issue of exhaustion sua sponte, see United States v. Bendolph,
409 F.3d 155, 173 (3d Cir. 2005) (Nygaard, J., concurring), it
declines to do so here and will instead deny the Petition on the
merits pursuant to 28 U.S.C. § 2254(b)(2), see Mahoney v.
Bostel, 366 F. App'x 368, 371 (3d Cir. 2010).

> then go on to Questions 5, 6, 7, 8. If you
> answer Question Number 1 not guilty,
> however, you should then go on to consider
> Question Number 2. Question Number 2,
> defendant Jesus Araiza Avila is charged with
> passion provocation manslaughter as a result
> of an incident that occurred on September
> 1st, 2007, in Burlington City.

(ECF No. 8-43, at 62-63 (emphasis added).) Petitioner argues

that by instructing the jury to consider the charge of murder

before the lesser-included offense of passion-provocation

murder, it "preclude[d] proper consideration of

passion/provocation manslaughter." (ECF No. 9, at 25-26.) In

addition to this charge, the trial court also provided to the

jury a sequential verdict sheet. (ECF No. 8-43, at 62-64.)

On direct appeal, Petitioner argued that the jury

instructions were incorrect under state law. The Appellate

Division denied relief because Petitioner could not demonstrate

that the jury instructions, if in error, were capable of

producing an unjust result. Araiza-Nava-Avila, 2012 WL 1231888,

at *3-4. Moreover, the Appellate Division held that while a

more recent version of the verdict sheet would have been

preferable, "the trial court's use of a sequential verdict sheet

. . . did not constitute plain error." Id.

The Supreme Court has made clear that "the fact that [a

jury] instruction was allegedly incorrect under state law is not

a basis for habeas relief." Duncan v. Morton, 256 F.3d 189, 203

11

(3d Cir. 2001) (quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 71–72 (1991)).  For an incorrect jury instruction to warrant habeas relief, the instruction must have "by itself so infected the entire trial [such] that the resulting conviction violates due process."  <u>Id.</u> (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977)).  It is not enough that the instruction is merely "undesirable, erroneous, or even universally condemned."  <u>Id.</u> To determine the effect of an allegedly erroneous jury instruction on the validity of a petitioner's conviction, courts cannot judge the instruction "in artificial isolation," but must consider it "in the context of the overall charge."  <u>Cupp v. Naughten</u>, 414 U.S. 141, 146–47 (1973).

Petitioner has not shown that the trial court's instruction to the jury on passion-provocation violated his right to due process.  Indeed, Petitioner cannot even demonstrate that the jury instructions were incorrect under state law — the trial court's instruction was modeled after New Jersey's model jury charge on "Murder, Passion/Provocation and Aggravated/Reckless Manslaughter."  <u>Araiza-Nava-Avila</u>, 2012 WL 1321888, at *3. Because Petitioner has not demonstrated that the jury instructions on passion-provocation murder "so infected" his trial to have deprived him of his right to due process, relief on this claim is denied.

**2. Ground Two**

12

In Ground Two, Petitioner alleges that the trial court erred in admitting evidence of prior threats made by Petitioner to Moyer that he alleges were "highly prejudicial." (ECF No. 1, at 6.) Petitioner argues that this violated his right to due process under the Fifth and Fourteenth Amendments. (ECF No. 9, at 33.)

The threats made by Petitioner were admitted through the testimony of Moyer and her family members. Petitioner specifically challenges the testimony given by Moyer's family members, which the Appellate Division described as follows:

> Moyer's mother testified to being present when Moyer translated that defendant threatened to "beat the shit out of her." Moyer's sister testified that during arguments in front of her and over the phone, Moyer translated that defendant was threatening to kill Moyer. One threat involved the use of "something in the trunk of a car" against Moyer and any new boyfriends. On another occasion, Moyer told her sister that defendant threatened to kill her and Parra.
>
> Moyer's father testified to seeing defendant peeking through the window of their house. . . . Moyer's father further testified that, in July 2007, Moyer told him that defendant stated he had a bullet for her, Parra and himself.
>
> Moyer's brother Jonathan testified that on the night of the shooting Parra told him defendant was coming to the house with something for Moyer and Parra.

<u>Araiza-Nava-Avila</u>, 2012 WL 1231888, at *4. The Appellate

Division affirmed the admission of the threats under the New Jersey Rules of Evidence, finding that the threats were relevant to the motive and intent of Petitioner to shoot Moyer and Parra. Id. at *4-5.

The Supreme Court has held that "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983) (citing Spencer v. Texas, 385 U.S. 554, 564 (1967)); see also Wilson v. Vaughn, 533 F.3d 208, 213 (3d Cir. 2008) ("Admissibility of Evidence is a state law issue."). Thus, a petitioner cannot prevail on such a claim unless he can "prove that he was deprived of 'fundamental elements of fairness in [his] criminal trial." Glenn v. Wynder, 743 F.3d 402, 407 (3d Cir. 2014) (alteration in original) (quoting Riggins v. Nevada, 504 U.S. 127, 149 (1992)).  Where a petitioner brings a claim for habeas relief related to the admission of "other crimes" evidence, he is only entitled to habeas relief "if 'the evidence's probative value is so conspicuously outweighed by its inflammatory content, so as to violate a defendant's constitutional right to a fair trial.'" Bronshstein v. Horn, 404 F.3d 700, 730 (3d Cir. 2005) (quoting Lesko v. Owens, 881 F.2d 44, 52 (3d Cir. 1989)).

The admission of testimony regarding threats made by Petitioner to Moyer did not deprive Petitioner of his right to

14

due process under the federal constitution.  As the Appellate
Division determined, the threats were properly admitted under
state law as evidence of Petitioner's motive and intent to shoot
Moyer and Parra.  Moreover, the trial court gave a limiting
instruction to the jury that the threats were only to be
considered for "the limited purposes of trying to establish that
the defendant had motive and/or intent on the date of the
incident" and that it could not use the "evidence to decide that
the defendant has a tendency to commit crimes or that he is a
bad person." (ECF No. 8-43, at 46.)  Petitioner has not
demonstrated that the admission of the threats made against
Moyer violated the fundamental fairness of his trial.  Thus,
relief on this claim is denied.

### 3. Ground Three

In Ground Three, Petitioner claims that he was denied a
fair trial as a result of the trial court's failure "to strike
the testimony of Detective Abadia in which he stated that
defendant was guilty of the shooting." (ECF No. 1, at 7.)
Detective Abadia had been called as a witness at trial by
defense counsel in support of Petitioner's theory that Nava-
Avila was the shooter.  It appears that Petitioner takes
specific issue with the following questioning by defense counsel
on redirect examination of Detective Abadia:

Q:  [S]omewhere in this investigation you

15

learned that Jonathan Moyer ID'd Rafael
Nava[-]Avila as the shooter; isn't that
true?

A:  Later on.  Later on, a lot later on.
But what occurred that night, the
information that was relayed that evening,
we were confident based on the investigation
that the defendant was the trigger man, was
the shooter.

Q:  Much later Jonathan Moyer gave his
statement to police that very day; isn't
that true?

A:  There is a lot going on in an
investigation?

Q:  But isn't that true?

A:  I believe so.

Q:  And Mr. Nava[-]Avila was still in your
custody at that time wasn't he?

A:  I couldn't comment on it.

.  .  .

Q:  So your office did not tell you that
Rafael Nava[-]Avila was still in custody,
did they?

A:  They – obviously they told me he was in
custody because I interviewed him at ten, I
believe it was 10:30 in the morning.

Q:  And you could have taken his clothing
but you didn't, right?

A:  No, I didn't.  I didn't take his
clothing, there was no reason to.

Q:  You could have checked him for gunpowder
resident but you didn't?

A:  There was no reason to, we were
confident we had – the perpetrator had been
identified and we were confident that we had

the perpetrator in custody and he is the
defendant.

. . .

Q:  So you could have gotten his clothes
when you found out about Jonathan Moyer's
statement, couldn't you?

A:  Yes, we could have.

Q:  And you could have done the other
testing right?

A:  That is correct.

Q:  But you chose not to because you decided
we've got the guy and we're not going to
look anymore, right?

A:  Once again, all the evidence pointed to
the defendant and <u>we were confident that the
defendant was the shooter.</u>

(ECF No. 8-42, 52–53, 55 (emphasis added).)

    The Appellate Division rejected this claim on direct

appeal, noting that

> [D]efense counsel elicited Detective Abadia's
> testimony concerning his opinion that defendant
> was the guilty party for strategic purposes to
> support her argument that law enforcement
> failed to properly investigate Nava-Avila.
> Defense counsel did not object to the
> testimony, did not request a cautionary
> instruction from the judge, and continued to
> ask questions soliciting similar opinion
> testimony from Detective Abadia.

<u>Araiza-Nava-Avila</u>, 2012 WL 1231888, at *6.

    Detective Abadia's testimony did not violate Petitioner's

due process right to a fair trial.  As the Appellate Division

found, the challenged testimony was elicited <u>by defense counsel</u>

17

as part of her strategy to shift the blame to Nava-Avila and demonstrate that the police could have investigated Nava-Avila further. Petitioner has not demonstrated the trial court's failure to sua sponte strike this testimony so infected the trial with unfairness that Petitioner's conviction violates due process. See Estelle, 502 U.S. at 72–73. Nor has Petitioner pointed to any Supreme Court case that would support his argument. Accordingly, relief on this claim is denied.

### 4. Ground Four

In Ground Four, Petitioner contends that the trial court "failed to instruct the jury on the inherent unreliability of oral statements allegedly made by the defendant." (ECF No. 1, at 8.) Petitioner fails to allege how this error violated his federal constitutional rights. Nevertheless, in light of the liberal construction courts are obligated to afford pro se filings, Higgs v. Att'y Gen. of the U.S., 655 F.3d 333, 339 (3d Cir. 2011), the Court will construe this claim as alleging a violation of Petitioner's right of due process under the Fifth and Fourteenth Amendments.

The charge Petitioner argues the trial court should have given to the jury is a Hampton/Kociolek[4] charge, which the Appellate Division explained "informs the jury of its function

---

[4] State v. Hampton, 294 A.2d 23 (N.J. 1972); State v. Kociolek, 129 A.2d 417 (N.J. 1957).

to determine whether the statements allegedly made by defendant were actually made, and, if so, whether the statements or any portion of them was credible." _Araiva-Nava-Avila_, 2012 WL 1321888, at *6.  The Appellate Division further explained that if the statements made by defendant are "unnecessary to prove defendant's guilt because there is other evidence that clearly establishes guilt . . . the failure to give a _Hampton_ charge would not be reversible error." _Id._ (quoting _State v. Jordan_, 688 A.2d 97, 105 (N.J. 1997)).  The Appellate Division determined that the trial court did not err by not giving this charge because the statements admitted were not necessary to prove Petitioner's guilt.  _Id._

The Appellate Division's determination was neither contrary to nor an unreasonable application of federal law.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." _Estelle_, 502 U.S. at 67-68.  Indeed, as previously noted, _supra_, at 11-12, habeas relief is unavailable for allegedly erroneous jury instructions unless the petitioner establishes that the error "by itself so infected the entire trial." _Duncan_, 256 F.3d at 203.

Petitioner has not made that showing here.  The Appellate Division determined that the trial court did not err under state law and Petitioner points to no Supreme Court precedent to support his position that the trial court's failure to provide

this jury instruction entitles him to habeas relief.
Accordingly, this claim is denied.

### 5. Ground Five

In Ground Five, Petitioner alleges that his counsel was
deficient for failing to provide copies of discovery that had
been translated into Spanish.  The Sixth Amendment of the United
States Constitution provides:  "[i]n all criminal prosecutions,
the accused shall enjoy the right . . . to have the Assistance
of Counsel for his defense."  U.S. Const. amend. VI.  The
Supreme Court has recognized that "the right to counsel is the
right to the effective assistance of counsel."  Strickland v.
Washington, 466 U.S. 668, 686 (1984) (quoting McMann v.
Richardson, 397 U.S. 759, 771 n.14 (1970)).  A showing of
ineffective assistance of counsel requires two components to
succeed.  Id. at 687.  The two requisite proofs are as follows:
(1) a defendant must show that counsel's performance was
deficient; and (2) the defendant must show prejudice.  Id.  The
analysis is underpinned by an understanding that counsel's role
is to ensure the production of a reliably just result with the
adversarial process of trial.  Id.

When a convicted defendant complains of deficient
performance, the defendant's burden of proof is to show that the
conduct of counsel fell below an objective standard of
reasonableness.  Id. at 688.  Hence, [j]udicial scrutiny of

counsel's performance must be highly deferential." Id. at 689.
To combat the natural tendency for a reviewing court to
speculate whether a different strategy at trial may have been
more effective, the Supreme Court has "adopted the rule of
contemporary assessment of counsel's conduct." Maryland v.
Kulbicki, 136 S. Ct. 2, 4 (2015) (quoting Lockhart v. Fretwell,
506 U.S. 364, 372 (1993)).  Thus, when reviewing for an
ineffective assistance of counsel, "a court must indulge a
strong presumption that counsel's conduct falls within the wide
range of reasonable professional assistance." Woods, 135 S. Ct.
at 1375 (quoting Strickland, 466 U.S. at 689); cf. United States
v. Chronic, 466 U.S. 648, 659 (1984) (holding that courts may
presume deficient performance and resulting prejudice if a
defendant "is denied counsel at a critical stage of his trial").

Because Petitioner's ineffective assistance of counsel
claims are raised through a § 2254 petition, federal "review
must be 'doubly deferential' in order to afford 'both the state
court and the defense attorney the benefit of the doubt.'"
Woods, 135 S. Ct. at 1376 (quoting Burt v. Titlow, 134 S. Ct.
10, 13 (2013)); see also Cullen, 563 U.S. at 190 ("[R]eview of
the [State] Supreme Court's decision is thus doubly
deferential."); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)
("[D]oubly deferential judicial review applies to a Strickland
claim evaluated under the § 2254(d)(1) standard . . . .");

Yarborough, 541 U.S. at 6 ("Judicial review of a defense attorney ... is therefore highly deferential--and doubly deferential when it is conducted through the lens of federal habeas."). Indeed, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

As to proving prejudice under Strickland, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. at 693. To succeed on this proof, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hinton v. Alabama, 134 S. Ct. 1081, 1088 (2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). A reasonable probability is a probability which sufficiently undermines confidence in the outcome of the trial. Strickland, 466 U.S. at 694.

Petitioner alleges that his counsel was ineffective for failing to provide translated copies of discovery that "would have effectively assisted the translator and the defendant." (ECF No. 1, at 23.) The PCR Court denied this claim for several reasons. First, the PCR Court determined that Petitioner had

not supported his assertion that his trial counsel refused any requests for Spanish-translated copies of discovery. (ECF No. 8-27, at 6.) The PCR Court further determined that even had counsel failed to provide translated copies of discovery, she would not have been deficient because trial counsel reviewed the discovery with Petitioner. (Id. at 7.) Second, the PCR Court found that Petitioner additionally failed to show how this alleged failure prejudiced him — indeed, Petition "put forth no evidence tending to suggest [his counsel] was not knowledgeable about defendant's case or that defendant would have been able to gain greater insight after reading translated discovery on his own." (Id. at 8.) The Appellate Division affirmed. Araiva-Avila, 2015 WL 3843509, at *1.

Petitioner is not entitled to relief on this claim; the PCR Court's finding that his counsel was not ineffective for not providing translated copies of discovery was not unreasonable. First, Petitioner cannot show his counsel was deficient by not providing translated copies of discovery. Petitioner's PCR counsel conceded on the record at oral argument that trial counsel reviewed the discovery with Petitioner with a translator present. There is no requirement that counsel also provide translated copies of discovery for Petitioner to review on his own. Accord Echevarri v. MacFarland, No. 05-899, 2005 WL 3440430, at *6 (D.N.J. Dec. 14, 2005) (finding trial counsel was

23

not ineffective for not providing translated copies of discovery where petitioner did not claim counsel never verbally discussed the discovery with him).  Second, Petitioner has not alleged any prejudice that occurred as a result of counsel's error nor has he demonstrated that the trial outcome would have been different had counsel provided these translated documents.  Thus, Petitioner is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALIBILITY

The AEDPA provides that an appeal may not be taken to a court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court will deny a certificate of appealability because jurists of reason would not find it debatable that dismissal of the Petition is correct.

## V.   CONCLUSION

For the above reasons, the § 2254 habeas petition is denied, and a certificate of appealability will not issue.  An appropriate Order follows.


Dated: March 25, 2019            s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.